USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                          :

LEONARD ORTIZ,                      :
                                          :

                            Plaintiff,   :            16-CV-9646 (VSB)
                                          :

          - against -          :       **OPINION & ORDER**
                                          :

PARKCHESTER NORTH        :
CONDOMINIUM, UNIFORMED SPECIAL  :
PATROLMAN OF                 :
PARKCHESTER NORTH        :
CONDOMINIUMS ELEANORA     :
SULLIVAN SHIELD NO. 782, and    :
UNIFORMED SPECIAL        :
PATROLMAN OF PARKCHESTER    :
NORTH CONDOMINIUMS      :
JAMES FRYE,                  :
                       Defendants.  :
                                          :

------------------------------------------------------------X

Appearances:

Jessica Massimi
The Law Offices of Michael S. Lamonsoff
New York, NY
*Counsel for Plaintiff*

Alexander Shindler
Tanya M. Branch
Brody & Branch LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Before me is the motion of Defendants Parkchester North Condominium ("PNC"),

Uniformed Special Patrolman of PNC Eleanora Sullivan ("Sullivan"), and Uniformed Special

Patrolman of PNC James Frye ("Frye") (collectively, "Defendants") to dismiss portions of the

First Amended Complaint ("FAC") of Plaintiff Leonard Ortiz ("Plaintiff") for lack of subject

matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)[1] and for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 49.) Because Plaintiff failed

to allege a policy or custom on behalf of Defendant PNC that caused Plaintiff's injuries, and

because Plaintiff failed to allege that Defendants Sullivan or Frye had a propensity for

misconduct or acted outside the scope of their employment, Defendants' motion to dismiss is

GRANTED.

## I.  **Background**[2]

Defendant PNC is a private business association that, at all times relevant to this action,

operated the Parkchester North Condominium complex located at 1594 Unionport Road in Bronx

County. (FAC ¶ 7.)[3] Defendant PNC employed an organization of "special patrolmen," referred

to as the Parkchester Department of Public Safety ("PDPS"), (*id.* ¶¶ 8, 14), which performed

security services in the privately owned residential community known as Parkchester, (*id.* ¶¶ 10,

12, 14). Although they were employed by Defendant PNC, members of the PDPS were

appointed by the New York City Police Commissioner, licensed by the City of New York, and

authorized to serve as New York State Peace Officers in Parkchester. (*Id.* ¶¶ 10, 12.)

Members of the PDPS are "special patrolmen" as defined under N.Y.C. Admin. Code §

14-106. (*Id.* ¶ 10.)

> Special patrolmen, appointed in pursuance of law while acting as such special
> patrolmen shall possess the powers, perform the duties, and be subject to the orders,
> rules and regulations of the [police] department [of the City of New York] in the

---

[1] Although Defendants' motion papers include reference to Rule 12(b)(1), they fail to include any substantive arguments in their memoranda of law on the basis for lack of subject matter jurisdiction. Therefore, I do not address Defendants' motion as it relates to Rule 12(b)(1).

[2] The following factual summary is drawn from the allegations of the FAC, (Doc. 38), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "FAC" refers to Plaintiff's First Amended Complaint, filed February 27, 2017. (Doc. 38.)

same manner as regular members of the [police] force. Every such special patrolman shall wear a badge, to be prescribed and furnished by the [police] commissioner [of the City of New York].

N.Y.C. Admin. Code. § 14-106(b). PNC was responsible for hiring, training, and supervising the PDPS and for the policies, practices, and conduct of all PDPS Special Patrolmen. (FAC ¶ 14.) At all times relevant to this action, Defendants Frye and Sullivan (the "Individual Defendants") were PDPS Special Patrolmen, on duty, in uniform, and working in their official capacities. (*Id.* ¶¶ 15, 24.)

Plaintiff alleges that on December 28, 2013, at approximately 6:00 p.m., he was lawfully present inside the Parkchester North Condominium complex. (*Id.* ¶ 22.) The Individual Defendants—without any legal justification—approached Plaintiff in the complex, searched him, and despite the lack of any evidence of wrongdoing, handcuffed Plaintiff, slammed him to the ground, and maced him. (*Id.* ¶¶ 23–30.) The Individual Defendants then arrested Plaintiff and took him to the emergency room of the local hospital—where he remained in their custody—to receive medical treatment for injuries sustained at their hands. (*Id.* ¶¶ 31–33.) Plaintiff was taken to the station house of a local police precinct, where he was held for several hours and searched. (*Id.* ¶ 34.) The search revealed no evidence of drugs, guns, or contraband. (*Id.* ¶ 35.) He was then transferred to Bronx County Central Booking, where he was held for several more hours. (*Id.* ¶ 36.)

Eventually, Plaintiff was arraigned on a criminal complaint based on false allegations sworn to by Defendant Sullivan. (*Id.* ¶ 37.) Plaintiff alleges that Defendants knowingly provided these false statements to the Bronx County District Attorney's Office, (*id.* ¶ 40), which used them as the basis to charge Plaintiff with menacing, resisting arrest, and harassment, (*id.* ¶¶ 38–39). Defendants knew the information and evidence provided to the Bronx County District

Attorney's Office to be false when Defendant Sullivan provided them, (*id.* ¶ 41), and they withheld exculpatory evidence from the District Attorney, (*id.* ¶ 54). Plaintiff was released after his arraignment and given a court date, (*id.* ¶ 42), and he made several subsequent court appearances before the charges against him were ultimately dismissed, (*id.* ¶ 43.)

At the time of the challenged conduct, the Individual Defendants were on duty as Uniformed Special Patrolmen of the PDSP and acting within the scope of their employment by Defendant PNC. (*Id.* ¶ 49.) Their acts were done in furtherance of Defendant PNC's interests, (*id.*), pursuant to policies, practices, and procedures of Defendant PNC, including: (1) deliberate indifference to aggressive and violent actions or propensities of the PDSP; (2) ineffective training of employees in identifying constitutionally permissible bounds of their authority; (3) systematic creation of an environment in which employees fail to use due diligence when exercising their authority; (4) deliberate indifference to verifying whether a seizure, stop, arrest, or use of force is constitutionally permissible; (5) ineffective oversight and supervision of activities and arrests by the PDSP; and (6) failure to institute remedial measures or other disincentives for PDSP Special Patrolmen who violate constitutional rights, (*id.* ¶ 67). As evidence of these policies, practices, and procedures, Plaintiff lists fourteen other civil cases involving allegations of the use of excessive force, false arrest, false imprisonment, or malicious prosecution against Defendant PNC, non-party Parkchester South Condominium, Inc., the City of New York, and various individual defendants who served as special patrolmen or New York City Police Department ("N.Y.P.D.") officers. (*Id.* ¶ 68.) None of the fourteen other actions named the Individual Defendants as defendants.

## II.  __Procedural History__

Plaintiff filed his Complaint on December 14, 2016 against Parkchester DPS, LLC; the Board of Managers of the Parkchester North Condominium; Parkchester South Condominium, Inc.; the Board of Managers of Parkchester Condominium, Inc.; Parkchester Preservation Management, LLC (collectively, the "Parkchester Corporate Defendants"); Defendant City of New York; and Defendants Sullivan and Frye.  (Doc. 1.)

On February 27, 2017, Plaintiff, on consent, filed the FAC, which substituted the Parkchester Corporate Defendants for Defendant PNC.  (FAC 1.)  The FAC contains the following causes of action:  (1) deprivation of rights under the U.S. Constitution, pursuant to 42 U.S.C. § 1983, against the Individual Defendants ("First Cause of Action"); (2) violations of the Fourth and Fourteenth Amendments of the U.S. Constitution, pursuant to 42 U.S. § 1983, against Defendant PNC ("Second Cause of Action"); (3) negligence under New York state law against Defendant PNC ("Third Cause of Action"); and (4) deprivation of rights under the U.S. Constitution, pursuant to 42 U.S.C. § 1983, against Defendant City of New York ("Fourth Cause of Action").  (*Id.* ¶¶ 50–96.)

I granted Defendants leave to file a motion to dismiss the FAC on June 12, 2017.  (Doc. 46.)  Defendants filed their motion and supporting papers on August 11, 2017, (Docs. 49–51), seeking dismissal only of Plaintiff's Second and Third Causes of Action against Defendant PNC. Plaintiff filed his opposition on September 7, 2017, (Docs. 52–53), and Defendants filed their reply on September 22, 2017, (Doc. 54).  On January 26, 2018, the parties stipulated to the voluntary dismissal and withdrawal of Plaintiff's Fourth Cause of Action against Defendant City of New York.  (Doc. 56.)

### III.    **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *accord Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*.

### IV.    **Discussion**

Defendants move to dismiss: (1) Plaintiff's Second Cause of Action for deprivation of rights under the Fourth and Fourteenth Amendments of the U.S. Constitution, pursuant to 42 U.S. § 1983, against Defendant PNC; and (2) Plaintiff's Third Cause of Action for negligence under New York state law against Defendant PNC. Plaintiff has withdrawn his claim against

Defendant PNC under the Fourteenth Amendment. (Pl.'s Opp. 8.)[4] I address Defendants' motion against Plaintiff's remaining claims in turn.

### A. *Section 1983*

Defendants move to dismiss Plaintiff's Second Cause of Action on the basis that Plaintiff has failed to adequately allege (1) that Defendant PNC acted under color of state law, (Defs.' Mem. 4–5),[5] and (2) that a policy or custom of Defendant PNC caused the deprivation of Plaintiff's constitutional rights, (*id.* at 5–7, 8–10).

### 1. Color of State Law

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. To succeed on a § 1983 claim, "a plaintiff must allege that he was injured either by a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Here, Plaintiff has voluntarily dismissed his action against the City of New York, (Doc. 56), and the only remaining defendants are private entities. Therefore, he must allege that the remaining defendants acted under color of state law.

An individual acts under color of state law when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (internal quotation marks omitted). "For the conduct of a private entity to be fairly attributable to the state, there must be

---

[4] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to the Parkchester Defendants' Motion to Dismiss, filed September 7, 2017. (Doc. 52.)

[5] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss, filed August 11, 2017. (Doc. 51.)

such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 187 (2d Cir. 2005) (internal quotation marks omitted). A "close nexus" exists when "the state exercises coercive power [or] is entwined in the management or control of the private actor." *Id.* (internal quotation marks omitted).

Members of the PDPS are employed by Defendant PNC, but they are appointed by the New York City Police Commissioner, licensed by the City of New York, and authorized to serve as New York State Peace Officers in Parkchester. (FAC ¶¶ 8, 10.) As a group of special patrolmen, the PDPS "possess the powers, perform the duties, and [are] subject to the orders, rules and regulations of the [police] department [of the City of New York] in the same manner as regular members of the [police] force." N.Y.C. Admin. Code § 14-106. In addition, they "wear a badge . . . prescribed and furnished by the [police] commissioner [of the City of New York.]" *Id.* Members of the PDPS, therefore, are authorized by law to search individuals, to seize property, to detain individuals, to make arrests, and to use appropriate force in the same manner and under the same circumstances as regular members of the N.Y.P.D. *See id.*

Multiple courts in this circuit have held that security officers employed by private entities and appointed pursuant to the Administrative Code as special patrolmen—including members of PDPS—act under the color of state law when performing duties normally performed by N.Y.P.D. officers. *E.g.*, *Simon v. City of N.Y.*, No. 14-CV-8391 (JMF), 2015 WL 2069436, at *1 (S.D.N.Y. May 4, 2015) (finding that members of PDPS acted under color of state law when they stopped, searched, assaulted, and arrested plaintiff); *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 396 (S.D.N.Y. 2006) (finding that plaintiff's allegations that defendant stopped, detained, and assaulted plaintiff while performing his duties as a special patrolman were

8

sufficient to survive motion for judgment on the pleadings), *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010) (summary order); *Temple v. Albert*, 719 F. Supp. 265, 267 (S.D.N.Y. 1989) ("Special Patrolmen acting pursuant to a statutory grant of police power are sufficiently controlled by the state to be properly characterized as acting under color of state law." (internal quotation marks omitted)); *Rojas v. Alexander's Dep't Store, Inc.*, 654 F. Supp. 856, 858 (E.D.N.Y. 1986) (finding that a special patrolman appointed by the N.Y.P.D. Commissioner and employed as a store detective for a department store was a government official subject to liability under section 1983).

The FAC contains allegations that plausibly assert that the Individual Defendants acted under the color of state law. Specifically, Plaintiff alleges that the Individual Defendants committed the challenged actions while they were in uniform and on duty as special patrolmen and pursuant to their authority under the Administrative Code as special patrolmen. (FAC ¶¶ 15, 49.) Plaintiff further alleges that the Individual Defendants searched, arrested, and used force against Plaintiff in their capacities as special patrolmen. (*Id.* ¶¶ 24–31.) In addition, after the arrest, the Individual Defendants detained Plaintiff in their custody at the hospital in their capacities as special patrolmen. (*Id.* ¶ 33.) Finally, the Individual Defendants are alleged to have provided false statements to the Bronx County District Attorney's Office concerning Plaintiff's arrest—which were the basis for the charges brought against Plaintiff—in their capacities as special patrolmen. (*Id.* ¶¶ 37–41.) All of the Individual Defendants' allegedly unlawful acts, therefore, occurred pursuant to power "possessed by virtue of state law and made possible only because [the Individual Defendants were] clothed with the authority of state law." *Polk Cty.*, 454 U.S. at 317–18 (internal quotation marks omitted).

Because I find that the Individual Defendants acted under the color of state law, I next

turn to the issue of whether Defendant PNC also acted under the color of state law; I find that it did. Defendant PNC hired and employed the Individual Defendants to provide security services in furtherance of the interests of Defendant PNC. (FAC ¶¶ 12, 14, 49, 75.) At the time of the challenged conduct, the Individual Defendants were on duty as special patrolmen and acting within the scope of their employment by Defendant PNC. (*Id.* ¶ 49.) Therefore, Defendant PNC's "decision to employ . . . special patrolm[e]n involve[d] a utilization for [Defendant PNC's] benefit of state law enforcement authority sufficient to satisfy section 1983's under color of state law requirement." *Rojas*, 654 F. Supp. at 858 (internal quotation marks omitted).

### 2. Policy or Custom

Even if Defendant PNC acted under the color of state law, it is not liable under § 1983 unless Plaintiff has alleged (1) the existence of a policy or custom of Defendant PNC, and (2) that such policy or custom caused Plaintiff's injury. The Supreme Court has held that the unconstitutional acts of an individual employee under §1983 do not confer liability upon her employer; liability under §1983 attaches only when an entity has "caused" a constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). Therefore, just as municipal corporations are not liable under § 1983 under a theory of *respondeat superior*, *id.* at 694, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that 'action pursuant to official policy of some nature caused a constitutional tort," *Rojas*, 924 F.2d at 408 (quoting *Monell*, 436 U.S. at 691) (internal citations and emphasis omitted); *accord Green v. City of N.Y.*, 465 F.3d 65, 82 (2d Cir. 2006) (finding that a private hospital "is not vicariously liable for any constitutional torts that its employees may have committed"); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) (noting that "a private corporation could be held liable under Section 1983 for its own

unconstitutional policies").  Liability attaches only when a plaintiff establishes "a causal link between an official policy or custom and the plaintiff['s] injury."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

"[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."  *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  However,

> such acts would justify liability of a municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Id.*  At the pleading stage, a plaintiff "must give a factual description of such a policy, not just bald allegations that such a thing existed."  *Bess v. City of N.Y.*, 11 Civ. 7604(TPG), 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013).

Plaintiff does not allege that Defendant PNC had an express policy that caused Plaintiff's injuries.  Rather, Plaintiff's allegations appear to fall into the second and third categories articulated in *Jones*:  (1) acts that "were sufficiently widespread and persistent" to constitute "a custom, policy, or usage of which supervisory authorities must have been aware," and (2) a custom, policy, or usage that could "be inferred from evidence of deliberate indifference of supervisory officials to such abuses."  691 F.3d at 81.  I address each theory in turn.

### a.  Widespread and Persistent Acts

"The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation."  *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992).  A court may find that an entity has a custom that caused a constitutional violation when, "faced with a pattern of misconduct, it does nothing, compelling the conclusion that it has acquiesced in

or tacitly authorized its subordinates' unlawful actions." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009). The misconduct must be so "persistent and widespread" as to "constitute a custom or usage with the force of law." *Sorlucco*, 971 F.2d at 870–71 (internal quotation marks omitted). In other words, to prevail under this theory of liability, a plaintiff must allege that the practice is "permanent and well-settled" within the institution, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks omitted), such that it can be said to be the institution's "standard operating procedure," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted).

To support a finding of an unconstitutional custom or policy on the part of Defendant PNC, the FAC lists fourteen other lawsuits allegedly initiated against Defendant PNC that involve "similarly wrongful conduct." (FAC ¶ 68.) The FAC lists the name of each lawsuit, its docket number, and the court in which the action was brought. (*Id.*) It also lists the date of the alleged misconduct for ten of the lawsuits, which ranges from 1998 to 2014. (*Id.*) For each lawsuit, the FAC includes a short description of the facts involved in the litigation. (*Id.*) For six of the lawsuits, the FAC describes the allegations made in the complaint. (*E.g.*, *id.* ¶ 68(c) ("False arrest, false imprisonment, excessive force, and malicious prosecution allegations against PDSP Special Patrolmen pursuant to 42 U.S.C. § 1983.").) For the eight other lawsuits, the FAC does not state whether it describes the allegations in the complaint or findings of fact made by a court or a jury. (*E.g.*, *id.* ¶ 68(d) ("PDSP Special Patrolmen subjected Mr. Berry to excessive force and false arrest, before forwarding false information to the District Attorney's Office.").) The FAC does not describe the ultimate disposition of any of the lawsuits.

The FAC's reference to other lawsuits over the span of nearly two decades involving allegedly similar unlawful conduct without any allegations as to the ultimate disposition of those

lawsuits is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom of Defendant PNC.  Plaintiff's description of each lawsuit indicates conduct similar to that challenged here, but Plaintiff fails to allege that any of the lawsuits resulted in an adjudication of liability against any of the defendants involved in the lawsuits, let alone against Defendant PNC.[6]  These allegations do not plausibly allege a widespread and persistent practice sufficient to infer a policy or custom for *Monell* liability.[7]  *See Walker v. City of N.Y.*, No. 14-CV-808 (ER), 2015 WL 4254026, at *9 (S.D.N.Y. July 14, 2015) (finding that allegations of thirty-six lawsuits involving allegedly false arrests, none of which resulted in an adjudication or finding of liability, over the span thirteen years, were "insufficient to plausibly support an inference of a widespread custom"); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (finding that "allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) . . . do[] not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom"); *Walker v. City of N.Y.*, No. 12 Civ. 5902(PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (finding that plaintiff's reliance on ten complaints, "none resulting in an adjudication of liability," over the span of a decade, "hardly suggests the frequency or pervasiveness of the purported custom that is required

---

[6] Defendants note that twelve of the lawsuits listed by Plaintiff do not include Defendant PNC in the case title. (Defs.' Mem. 6–7.)  However, this result may be due—at least in part—to Plaintiff's listing of only the first named defendant in the case title.  I performed an independent review of the publicly available electronic dockets of the seven lawsuits listed by Plaintiff filed in federal court, as the electronic dockets were unavailable for the lawsuits filed in state court.  My review revealed that three of the seven actions brought in federal court did not actually name Defendant PNC as a defendant.  (FAC ¶ 68(h), (i), (k).)  Of the seven actions brought in state court, the FAC lists only one that names Defendant PNC as the first defendant.  (*Id.* ¶ 68(a).)  The description listed under another state court action indicates that there were "[a]llegations against PNC."  (*Id.* ¶ 68(e).)  Therefore, based on the allegations in the FAC and my independent review, I can only confirm that six of the fourteen lawsuits listed in the FAC named Defendant PNC as a defendant.  (*See id.* ¶ 68(a), (b), (e), (j), (l), (m).)

[7] Even if Plaintiff had alleged the ultimate disposition of each lawsuit, my independent review of the federal lawsuits listed by Plaintiff reveals that none have resulted in a finding or admission of liability against Defendant PNC, and one of the cases is still pending.

to state a *Monell* claim"); *accord Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) ("[T]he number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist and did contribute to his injury."); *Rikas v. Babusch*, No. 13 cv 2069, 2014 WL 960788, at *3 (N.D. Ill. Mar. 12, 2014) ("[E]ach suit was ultimately settled and there was no finding of liability. Thus, the fact that prior lawsuits were filed against [defendant] does not support [plaintiff's] *Monell* claim nor does it evidence a widespread municipal practice."); *see also Collins v. City of N.Y.*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) ("[T]he litany of other police-misconduct cases are insufficient to make a plausible case for *Monell* liability.").

While it is true that courts may take judicial notice of filings in other lawsuits, they do so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). The fact that other plaintiffs have initiated lawsuits against Defendant PNC and other defendants alleging similar wrongful conduct does not establish that Defendant PNC committed the wrongful conduct alleged. *See Walker*, 2015 WL 4254026, at *9 ("It is not within this Court's purview to assess the veracity of either the claims of outside plaintiffs, or the defenses presented against them in cases that have settled or are pending before other judges."). A handful of unsubstantiated complaints is not enough to plausibly plead a widespread and persistent policy or practice. *See Tieman*, 2015 WL 1379652, at *17; *Walker*, 2014 WL 1259618, at *3. Therefore, Plaintiff fails to allege *Monell* liability under this theory.

b.  Deliberate Indifference

Plaintiff also presses a claim against Defendant PNC under a theory that Defendant PNC

failed to train and/or supervise its employees.  (FAC ¶ 67; Pl.'s Opp. 9–10.)  A defendant's

failure to train or supervise its employees may constitute an official policy or custom "if the

failure amounts to 'deliberate indifference' to the rights of those with whom the . . . employees

interact."  *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *City of Canton v.*

*Harris,* 489 U.S. 378, 388 (1989)).  In such cases, a plaintiff must show that a policymaking

official had notice "of a potentially serious problem of unconstitutional conduct, such that the

need for corrective action or supervision was obvious, and the policymaker's failure to

investigate or rectify the situation evidences deliberate indifference."  *Amnesty Am. v. Town of*

*W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (internal citation and quotation marks omitted).

A "policy of inaction in light of notice" that an entity's training or supervision program will

cause constitutional violations "is the functional equivalent of a decision by the [entity] to violate

the Constitution."  *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (internal quotation marks

omitted).

Courts in this circuit have adopted three requirements a plaintiff must meet to establish

§ 1983 liability for an entity's failure to train or supervise:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her
> employees will confront a given situation . . . . Second, the plaintiff must show that
> the situation either presents the employee with a difficult choice of the sort that
> training or supervision will make less difficult or that there is a history of employees
> mishandling the situation . . . . Finally, the plaintiff must show that the wrong choice
> by the city employee will frequently cause the deprivation of a citizen's
> constitutional rights.

*Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotation marks omitted).

A plaintiff who has established all three elements has established "the circumstances under

which a supervisor's failure to act triggers liability under § 1983." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

The Supreme Court has made clear that "deliberate indifference is a stringent standard of fault, requiring proof that a[n entity] disregarded a known or obvious consequence of [its] action." *Connick*, 563 U.S. at 61 (internal quotation marks omitted). An entity's culpability "is at its most tenuous where a claim turns on a failure to train." *Id.* The "stringent causation and culpability requirements" in the failure to train context "have been applied to a broad range of supervisory liability claims, including claims for failure to supervise and failure to discipline." *Tieman*, 2015 WL 1379652, at *19 (quoting *Reynolds*, 506 F.3d at 192).

With respect to a claim for failure to supervise, "the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the [entity] to investigate or to forestall further incidents." *Id.*

Plaintiff has adequately alleged that Defendant PNC was on notice of an "obvious need" for more or better supervision. Although past complaints are insufficient to establish liability under a "widespread practice" theory, they do support a theory of failure to supervise. *Id.* ("An obvious need may be demonstrated through proof of repeated complaints of civil rights violations . . . ."); *Tieman*, 2015 WL 1379652, at *20 (noting that while "[t]here is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be . . . thirteen claims alleged in nine lawsuits in five years" is sufficient to establish notice). Plaintiff's

allegations of prior or pending lawsuits alleging similar misconduct against Defendant PNC, (FAC ¶ 68), raise a plausible inference that Defendant PNC was put on notice of potential constitutional violations by its employees.

However, these allegations are not enough to establish deliberate indifference.  Plaintiff must also allege that Defendant PNC engaged in "no meaningful attempt . . . to investigate or to forestall further incidents."  *Vann*, 72 F.3d at 1049.  Here, Plaintiff submits only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678; *see also Walker*, 2015 WL 4254026, at *7.  For example, Plaintiff alleges several purported "policies, practices, and actions of PNC" that relate to Defendant PNC's purported failure to supervise:  (1) deliberate indifference to aggressive and violent actions or propensities of the PDSP; (2) systematic creation of an environment in which employees fail to use due diligence when exercising their authority; (3) deliberate indifference to verifying whether a seizure, stop, arrest, or use of force is constitutionally permissible; (4) ineffective oversight and supervision of activities and arrests by the PDSP; and (5) failure to institute remedial measures or other disincentives for PDSP Special Patrolmen who violate constitutional rights.  (FAC ¶ 67.)  In addition, Plaintiff alleges that Defendant PNC "had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline its employees and agents, and of failing to inform the individual Defendants' supervisors, of their need to train, screen, supervise, or discipline said employees and agents." (*Id.* ¶ 70.)  Plaintiff has merely asserted these conclusory and generalized statements without providing any factual support for these allegations.  For example, Plaintiff fails to allege that Defendant PNC failed to investigate any of the specific complaints listed in the FAC, or that it performed a half-hearted investigation demonstrating that it was uninterested in determining the facts of those complaints,

or that it determined that there was a basis for the complaints yet chose not to act. *See Yang Feng Zhao v. City of N.Y.*, 656 F. Supp. 2d 375, 397 (S.D.N.Y. 2009). Simply stating the phrases "deliberate indifference," "ineffective oversight and supervision," and "fail[ure] to institute remedial measures," (FAC ¶ 67), without more, is not enough to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547.

With regard to Plaintiff's failure to train claim, "a plaintiff must plausibly allege a specific deficiency in the [entity's] training." *Tieman*, 2015 WL 1379652, at *22. It is true that the Second Circuit has held that a plaintiff need not plead specific details regarding a defendant's training program at the motion to dismiss stage. *See Amnesty*, 361 F.3d at 130 n.10 ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation."). However, since the Supreme Court's rulings in *Twombly* and *Iqbal*, courts in this Circuit have required "more than a simple recitation of [a plaintiff's] theory of liability, even if that theory is based on a failure to train," *Simms v. The City of N.Y.*, No. 10-CV-3420 (NGG)(RML), 2011 WL 4543051, at *2 n.3 (E.D.N.Y. Sept. 28, 2011) (listing cases and stating that "[i]t may well be that plaintiffs cannot be expected to know the details of a municipality's training program without discovery, but that does not relieve them from the obligation to plead facts sufficient for a court to reasonably infer that some type of municipal policy, practice, or custom—including deliberate indifference to the population's constitutional rights—caused an employee training program to be deficient"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012) (summary order); *see also Tieman*, 2015 WL 1379652, at *22 (listing cases); *Walker*, 2015 WL 4254026, at *11.[8]

---

[8] Plaintiff contends that this Circuit has yet to decide whether *Iqbal* applies to claims for municipal liability under a

Plaintiff's allegations fail to state more than a "simple recitation" of Plaintiff's theory of liability. For example, the FAC alleges that Defendant "PNC knew or should have known that the individual Defendants . . . lacked proper training to carry out the duties to which they were assigned." (FAC ¶ 17.) Defendant PNC allegedly had "policies, practices, and actions" that included "[i]neffectively training employees in identifying what constitutes the Constitutionally permissible bounds of authority conferred unto them as Special Patrolmen." (*Id.* ¶ 67.) In addition, Defendant PNC "had *de facto* policies, practices, customs, and usages of failing to properly train . . . its employees and agents." (*Id.* ¶ 70.) None of these allegations provide any details with respect to what Defendant PNC's training programs were, who developed or administered them, or what the deficiencies were. Plaintiff also fails to allege any facts describing how Defendant PNC's purported failure to train specifically caused his constitutional deprivation. Plaintiff's conclusory statements are insufficient to state a claim for failure to train.

Because the FAC fails to plausibly allege a policy, custom, or practice on the part of Defendant PNC that caused Plaintiff's alleged constitutional deprivation, Plaintiff's Second Cause of Action against Defendant PNC is dismissed.

---

failure to train theory. (Pl.'s Opp. 9–10 (citing *Castilla v. City of N.Y.*, No. 09 Civ. 5446(SHS), 2012 WL 3871517, at *4 (S.D.N.Y. Sept. 6, 2012) (finding that "[t]he Second Circuit has not yet addressed whether *Iqbal* has heightened the pleading requirements for such a municipal liability claim" and citing district court cases applying "the pleading standard articulated in *Amnesty* to a *Monell* claim based on a failure to train")).) However, *Castilla* and the opinions it cites ignore the clear holding of *Iqbal*. The Supreme Court in *Iqbal* held that "[t]hough *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of [Federal] Rule [of Civil Procedure] 8. That Rule in turn governs the pleading standard 'in all civil actions and proceedings in the United States district courts.'" 556 U.S. at 684 (quoting Fed. R. Civ. P. 1) (internal citation omitted). Plaintiff fails to provide any authority holding that Rule 8 does not apply to *Monell* claims for a failure to train. Because *Iqbal* interpreted the pleading standard set forth in Rule 8, its holding controls in determining the sufficiency of Plaintiff's pleadings here.

## B.    *Negligent Hiring and Retention*

Plaintiff brings his Third Cause of Action under the laws of New York, alleging that

Defendant PNC "negligently hired, screened, retained, supervised, and trained" Defendants Frye

and Sullivan.  (FAC ¶¶ 72–77.)[9]  New York law has long recognized the tort of negligent hiring

and retention.  *See Gonzalez v. City of N.Y.*, 17 N.Y.S.3d 12, 15 (1st Dep't 2015).  An employer

may be liable for negligent hiring and retention

> when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm.  The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of his employees.

*Detone v. Bullit Courier Serv., Inc.*, 528 N.Y.S.2d 575, 576 (1st Dep't 1988) (internal citation

omitted); *see also Harisch v. Goldberg*, 14-cv-9503 (KBF), 2016 WL 1181711, at *14 (S.D.N.Y.

Mar. 25, 2016) (indicating that plaintiff must allege "that the defendant knew or should have

known of its employee's propensity to engage in the conduct that caused the plaintiff's injuries,

and that the alleged negligent hiring, supervision, or retention was a proximate cause of those

injuries") (internal quotation marks omitted).  "This tort applies equally to municipalities and

private employers," *Gonzalez*, 17 N.Y.S.3d at 15, and it requires a plaintiff to establish that the

employee was acting outside the scope of his or her employment, *Gray v. Schenectady City Sch.*

*Dist.*, 927 N.Y.S.2d 442, 446 (3d Dep't 2011).

Here, the FAC contains no allegations regarding any violent or dishonest propensities or

tendencies of Defendant Frye or Defendant Sullivan.  Plaintiff does not allege any facts

---

[9] The FAC does not specify whether the Third Cause of Action is brought against Defendant PNC as a claim for negligent hiring and retention or as a claim for negligence under a theory of *respondeat superior*.  (*See* FAC ¶¶ 72–77.)  However, Plaintiff notes that he "has not alleged any negligence claims against the individual Defendant officers."  (Pl.'s Opp. 8 n.3.)  It follows, therefore, that the negligence claim against Defendant PNC can only proceed under a theory of negligent hiring and retention.

indicating that either Defendant had a violent or criminal history or that they previously lied under oath. Nor does Plaintiff allege that any of the fourteen lawsuits listed were initiated against Defendants Frye or Sullivan. (*See* FAC ¶ 67.) The FAC's only reference to any propensity for misconduct on behalf of Defendants Frye or Sullivan is that Defendants PNC and City of New York "knew or should have known that the individual Defendants were prone to violence," (*id.* ¶¶ 17–18), and that Defendant "PNC knew or should have known through the exercise of reasonable diligence that PDPS Special Patrolmen were dangerous," (*id.* ¶ 76). These conclusory allegations, without any supporting facts, are insufficient to plead a claim for negligent hiring and retention.

Even if Plaintiff had adequately pleaded that Defendants Sullivan or Frye had violent or dishonest propensities, the FAC would still be insufficient because it contains no allegations that Defendants Sullivan or Frye acted outside the scope of their employment. To the contrary, the FAC specifically alleges that the acts of Defendants Sullivan and Frye occurred while they were "acting within the scope of their employment" by Defendant PNC. (*Id.* ¶¶ 20, 49.) While a Plaintiff may plead certain causes of action in the alternative, the FAC is devoid of allegations that Defendants Sullivan or Frye acted outside the scope of their employment, and it does not indicate that the Third Cause of Action is intended to have been pled in the alternative. (*Id.* ¶¶ 72–77.) As such, Plaintiff's Third Cause of Action is dismissed.

## V.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate Parkchester North Condominium as a defendant in this action and to terminate Docket No. 49. The Individual Defendants are instructed to file their Answers to the FAC within twenty-one (21) days of the entry of this Opinion & Order.

SO ORDERED.

Dated: June 13, 2018
      New York, New York

Vernon S. Broderick
United States District Judge